**NOT FOR PUBLICATION**                    **CASE CLOSED**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOCAL 54 PATROLMAN'S<br>BENEVOLENT ASSOCIATION,<br><br>                 Plaintiff,<br><br>          v.<br><br>ARMANDO B. FONTOURA, individually<br>and as SHERIFF OF ESSEX COUNTY;<br>JOSEPH DIVINCENZO, JR., individually<br>and as ESSEX COUNTY EXECUTIVE;<br>JOHN DOES 1-10; and COUNTY OF<br>ESSEX,<br><br>                 Defendants. | Civil Action No. 06-6278 (SDW)<br><br>**OPINION**<br><br>November 16, 2007 |

**WIGENTON**, District Judge.

Before this Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's Motion to Amend the First Amended Complaint. The Court, having considered the parties' submissions and heard oral argument on November 1, 2007, and for the reasons set forth below, **GRANTS** Defendants' motion on *Younger* abstention grounds, and **DENIES** Plaintiff's motion as moot.

## I.   JURISDICTION and VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff's claims arise under 42 U.S.C. §§ 1983 and 1985, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims. Venue is proper under 28 U.S.C. § 1391.

1

## II.   **BACKGROUND and FACTS**

The instant matter concerns a merger of the Essex County Police Department[1] ("ECPD")

and the Essex County Sheriff's Department ("ECSD").  The ECPD operates under the State's

Civil Service rules and statutes.  (Am. Compl. ¶ 9.)  In 1997, the Essex County Board of Chosen

Freeholders transferred authority over the ECPD to the ECSD, ordering that "the Sheriff shall

have, exercise and discharge the functions, powers and duties of the [County Police

Department]."  (Am. Compl. ¶ 23; Essex County Freeholders Ordinance No. 0-97-0006.)  The

ordinance was properly ratified and adopted on April 9, 1997.  (Def.'s Reply Ex. A.)

On July 26, 2004, Plaintiff filed a grievance against Defendants with the New Jersey

Public Employment Relations Committee ("PERC") regarding health insurance benefits under

its collective bargaining agreement.  PERC Docket No. CO-2005-017.  The record does not

indicate the current status of this matter.  Beginning in 2005, Sheriff Fontoura assigned ECSD

officers to cover shifts that should have been filled by ECPD officers according to the latter's

union contract.  (Am. Compl. ¶¶ 29-30.)  Plaintiff filed second and third grievances against

Defendants with PERC on January 20, 2005 and August 4, 2005 under its collective bargaining

agreement and was issued a favorable ruling by an independent arbitrator on February 8, 2006.

*See* (Am. Compl. ¶ 31); PERC Docket Nos. CO-2005-192, AR-2006-109.  On April 28, 2006,

Plaintiff filed an action before the Chancery Division of the New Jersey Superior Court, Docket

No. ESX-C-158-06, to confirm this arbitration award, and on May 2, 2006, Defendants ECSD

and County of Essex appealed the arbitrator's decision by way of their own independent action

to the Chancery Division of the New Jersey Superior Court, Docket No. ESX-C-134-06.  The

---

[1] The ECPD was formerly the Essex County Park Police ("ECPP").  (Am. Compl. ¶ 7,
10.)

parties, however, agreed to dismiss both matters without prejudice on February 26, 2007 purportedly pending resolution of the current litigation.

In June 2006, Sheriff Fontoura issued an administrative order updating the organizational structure of the ECSD, effectively converting all ECPD officers into ECSD officers. (Am. Compl. ¶ 33; Def.'s Mot. 3.) On August 30, 2006, Plaintiff filed a fourth unfair practice charge against Defendants before PERC alleging that this order was in retaliation for Plaintiff's 2005 grievances. (Def.'s Mot. 4.) After reviewing the parties' submissions in the matter, PERC ordered a plenary hearing in August 2006. *See* (Def.'s Mot. 5); *County of Essex and Essex County PBA Local No. 54*, 32 NJPER 125 (Sept. 20, 2006). The record does not indicate the current status of this matter. As no evidence has been presented to the contrary, the Court must assume based on the current motion record that the matter is still pending for purposes of the instant adjudication.

From 2006 to 2007, the New Jersey Department of Personnel ("DOP") conducted a full administrative review of the merger, specifically its impact upon promotional opportunities, testing, job titles, and seniority for County Police Officers. *See I/M/O County Police Officers, Essex County Sheriff's Office*, DOP Docket No. 2007-1525 (Apr. 12, 2007). After reviewing the party's submissions, the DOP entered a final administrative action on April 12, 2007 finding that the merger did not have any adverse effects on any of the aforementioned areas, but ordered that ECPD officers be provided lateral title changes. (Def.'s Mot. 6.) The last day for filing an appeal of this decision with the Appellate Division was on or about May 29, 2007. (Def.'s Mot. 7.) The Court is unaware of any appeal having been filed according to the motion record.

Plaintiff filed its First Amended Complaint on January 11, 2007 alleging, *inter alia*: (1) violation of Plaintiff's substantive and procedural due process rights, individually and in a

3

conspiracy, with respect to seniority, civil service test scores, assignments, overtime and merit

promotions, and training and supervision in violation of 42 U.S.C. §§ 1983, 1985 (Counts 1-2,

9); (2) retaliation, individually and in a conspiracy, in response to Plaintiff's freedom of

expression and association in violation of 42 U.S.C. §§ 1983, 1985 (Counts 3-6); (3) that the

1997 merger was unlawful and thereby void *ab initio* pursuant to the doctrine of legislative

equivalency (Count 7); and (4) violation of the parties' collective bargaining agreement (Count

8).

Defendants subsequently filed a Motion to Dismiss Plaintiff's First Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff filed opposition to Defendants'

motion and a separate motion to amend its complaint for a second time in an effort to cure an

apparent standing defect.  The Court heard oral argument on November 1, 2007, during which

Plaintiff's counsel argued the novel point that its suit was based on Plaintiff's members' political

canvassing in 2006, and that it had voluntarily withdrawn from PERC to avoid any abstention

claim.

## III.   **LEGAL STANDARD**

The Court must review Defendants' Motion to Dismiss according to the standard set

forth in Federal Rule of Civil Procedure 12(b)(6).  The court must accept as true all material

allegations of the complaint and it must construe the complaint in favor of the Plaintiff.  *Warth v.*

*Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*,

140 F.3d 478, 483 (3d Cir. 1998).  Generally, when reviewing a 12(b)(6) motion, the court may

only consider the complaint, exhibits attached to the complaint, matters of public record, and

undisputedly authentic documents if the plaintiff's claims are based upon those documents.

*Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The

4

court, however, may consider documents attached to, integral to, or relied upon by the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The court may also take judicial notice of relevant legal proceedings. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). A complaint should be dismissed "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump*, 140 F.3d at 483. While the complaint is to be construed in the light most favorable to the plaintiff, the court need not accept the plaintiff's legal conclusions or draw unwarranted factual inferences. *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 405-06 (6th Cir. 1998).

## IV.  DISCUSSION

Defendants' Motion to Dismiss argues that Plaintiff's claims are barred by the *Younger* abstention doctrine, which discourages federal interference with pending state proceedings.[2] In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court affirmed the longstanding policy discouraging federal court interference with state proceedings in the interests of equity, comity and federalism. *Id.* at 43-45. *Younger* applies to criminal, civil and administrative state proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986). Federal courts invoke the *Younger* doctrine and abstain where: (1) there is a pending state proceeding that is judicial in nature; (2) the state proceeding implicates important state interests; and (3) the state proceeding affords the complainant an adequate opportunity to raise

---

[2] Defendants' motion to dismiss also contains a myriad of other arguments that if credited, might result in dismissal of some or all of Plaintiff's claims. *See infra* note 5.

constitutional issues. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423,

432 (1982); *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. 1994), *cert. denied*, 514

U.S. 1015 (1995).

The first element of *Younger* requires there to be a pending state proceeding that is

judicial in nature. A "pending proceeding" is one that has already commenced rather than one

that is "merely incipient or threatened." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607 (1975).

During oral argument, Plaintiff argued that there were no "pending" state proceedings because

the matters before PERC and the New Jersey Chancery Court were voluntarily dismissed in lieu

of the present action.[3]  Plaintiff's contention, however, is precluded by *O'Neill*, in which the

Third Circuit held that:

> "[S]tate proceedings remain 'pending,' within the meaning of *Younger* abstention,
> . . . where adequate state-court judicial review of the administrative determination
> is available to the federal claimants, and where the claimants have chosen not to
> pursue their state-court judicial remedies, but have instead sought to invalidate
> the State's judgment by filing a federal action."

32 F.3d at 791. Here, the DOP initiated an administrative review of the merger in or around

June 2006 at Plaintiff's behest regarding its impact on promotional opportunities, testing, job

---

[3] The Court notes that when Plaintiff's counsel was directly questioned at oral argument
as to whether any documentation or evidence existed to definitively demonstrate Plaintiff's
putative claim that the four PERC matters referenced herein were dismissed, Plaintiff's counsel
responded that she was not in possession of any such evidence and she was unsure if any such
evidence even existed. To the Court's surprise, post-oral argument Plaintiff's counsel forwarded
unsolicited correspondence to the Court (which incidentally referenced a fifth previously
undisclosed purportedly inactive PERC matter under Docket No. CO-2007-067 ) along with
PERC's June 29, 2007 letter addressed to Plaintiff's counsel regarding PERC Docket No. CO-
2005-017. PERC's letter indicates that the matter is still active despite being filed nearly three
years prior, but that it will be dismissed on July 13, 2007 for lack of prosecution if Plaintiff's
counsel takes no action to pursue Plaintiff's claim. The letter further sets forth that Plaintiff's
counsel retains the right to move to vacate any such dismissal on motion. Most notably,
Plaintiff's counsel has not provided the Court with any documentation regarding dismissal of
any other PERC matters, nor did Plaintiff's briefs even dispute Defendants' satisfaction of the
first two elements of the *Younger* abstention doctrine. *See* (Pl.'s Opp'n 6-8.)

titles and seniority for County Police Officers, issuing a final administrative determination on April 12, 2007. Pursuant to N.J. Ct. R. 2:2-3(a)(2) and 2:4-1(b), Plaintiff could have appealed the matter as of right to the Appellate Division. It did not. As the Third Circuit stated in *O'Neill*, "a necessary concomitant of *Younger* is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court.'" 32 F.3d at 790 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 369 (1989)). As the DOP matter was an appealable administrative proceeding initiated by Plaintiff, the proceeding remains a "pending" state proceeding for *Younger* abstention purposes.

Administrative proceedings and hearings have long sufficed as "judicial in nature." *Dayton Christian*, 477 U.S. at 627, 627 n.2 (citing cases where lower courts were "virtually uniform in holding that the Younger principle applies to pending state administrative proceedings in which an important state interest is involved"); *Zahl v. Harper*, 282 F.3d 204, 209 (3d Cir. 2002). Only proceedings that "fail to 'rise to the level of adjudication'" are considered not "judicial in nature." *Zahl*, 282 F.3d at 209 (citation omitted). The DOP conducts hearings and reviews the written record in matters before it, N.J. Stat. Ann. § 11A:2-6(a), (b); the proceedings may result in a final judgment or adjudication, *id.*; and this judgment is subject to appellate review as of right, N.J. Ct. R. 2:2-3(a)(2). The Court need not belabor the point. The Third Circuit unequivocally stated in *O'Neill* that there is "no reason why a litigant in a state administrative proceeding should be permitted to forego state-court judicial review of the agency's decision in order to apply for relief in federal court," and that "state appellate review of a state court judgment must be exhausted before federal court intervention is permitted." 32 F.3d at 791-92. As the prior DOP proceeding is a pending state proceeding that is judicial in nature, Defendants satisfy the first element of *Younger* abstention.

7

Alternatively, Plaintiff's PERC claims appear to remain open to this date, while its claims before the Chancery Division were voluntarily dismissed without prejudice and thus, subject to vacation. Plaintiff cannot simply abandon its chosen state and administrative paths in hopes of receiving a better result before this Court. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 16 n.15 (1987) (holding that defendant "cannot escape *Younger* abstention by failing to assert its state remedies in a timely manner"); *Schall v. Joyce*, 885 F.2d 101, 107 (3d Cir. 1989) ("[O]ne might argue that the state proceedings do not afford [the plaintiff] an adequate opportunity to raise her federal claims. The Supreme Court, however, . . . [has] held that one 'cannot escape *Younger* abstention by failing to assert . . . remedies in a timely manner [in state court].'" (citation omitted)). To permit such judicial manipulation would be tantamount to forum shopping and in direct contravention of state and administrative efficiency.

The second element of *Younger* requires that the state proceeding implicate important state interests. This element rests on the vital consideration of comity, which necessarily includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44. In making this inquiry, the Court must examine the "importance of the generic proceedings to the State," rather than the state's narrow interest in the outcome of the particular case. *O'Neill*, 32 F.3d at 791-92 (citing *Council of New Orleans*, 491 U.S. at 364-65 (1989)). That New Jersey has the most substantial interest in labor-management relations involving state law enforcement officers is irrefutable. Furthermore, any federal interest is very minimal, if at all, and is substantially

8

outweighed by New Jersey's overriding interest in the present matter.  New Jersey has established a comprehensive statutory and regulatory scheme to govern labor and personnel matters for public employees.  *See* N.J. Stat. Ann. §§ 34:13A-1 *et seq.*, 11A:1-1 *et seq.*  It has created PERC and DOP to enforce and carry out the legislative mandates of these statutes.  To interfere in its operation would be to engage in the sort of judicial action that *Younger* and its progeny explicitly prohibit.  "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interpositions of the constitutional claims.'"  *Middlesex*, 457 U.S. at 432 (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)).  As New Jersey unequivocally has the most substantial interest in the operation and management of its labor and personnel force for public employees, Defendants satisfy the second element of *Younger* abstention.

The third element of *Younger* requires that the state proceeding afford the complainant an adequate opportunity to raise constitutional issues.  In the context of a state administrative proceeding, this element is satisfied "when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination."  *O'Neill*, 32 F.3d at 792; *accord Dayton Christian*, 477 U.S. at 629; *Middlesex*, 457 U.S. at 436.  Plaintiff has the exclusive burden to establish that "state procedural law barred presentation of its claims" in an administrative action or before the state courts.  *Schall*, 885 F.2d at 107 (quoting *Pennzoil*, 481 U.S. at 14); *accord Anthony v. Council*, 316 F.3d 412, 422 (3d Cir. 2003).  Furthermore, when a claimant fails to present its federal claims in a "related state-court proceeding[], a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary" and abstain.  *O'Neill*, 32 F.3d 785 (quoting *Pennzoil*, 481 U.S. at 15).  Plaintiff has utterly failed to carry its burden on this critical point, and thus, its federal claims are *prima facie* barred from being presented to this Court.

9

Regardless, Defendants contend that Plaintiff would have encountered no difficulty adjudicating its federal claims at the state level either before the state courts, PERC or DOP. The Court agrees. There is no plenary "right of access to a federal forum for the disposition of all issues," and considerations underlying *Younger* specifically militate against the availability of a "federal forum . . . prior to the completion of the state proceedings in which the federal" issues arise. *Huffman*, 420 U.S. at 607, 607 n.18. Defendants refer specifically to *Hunterdon Central High School Board of Education v. Hunterdon Central High School Teachers' Association*, 416 A.2d 980 (N.J. Super. Ct. App. Div. 1980), *aff'd*, 429 A.2d 354 (N.J. 1981), which held that PERC, or any other administrative agency, is "competent to pass upon constitutional issues germane to proceedings before" it in order to "better focus the issues for judicial review." *Id.* at 983 (citing *Alcala v. Wyoming State Bd. of Barber Exam'r*, 365 F. Supp. 560, 564 (D. Wyo. 1973)). The DOP is statutorily charged to administer and regulate a personnel system for the State. N.J. Stat. Ann. § 11A:1-2. Applicable DOP regulations prohibit an "appointing authority" to take (or threaten to take) retaliatory action against a public employee based on their "political activities or affiliation." N.J. Admin. Code § 4A:2-5.1(b). As the DOP proceeding specifically concerned the ECPD-ECSD merger and its various personnel aspects, Plaintiff's putative claims of retaliation for political activities and affiliation were certainly "germane to the proceedings" and therefore should have been presented to DOP for consideration.

Plaintiff disputes PERC and DOP's authority and ability to hear its federal claims and points to *I/M/O Board of Education of Town of Boonton*, 494 A.2d 279 (N.J. 1985), as supporting the proposition that constitutional issues are the exclusive province of the Courts. (Pl.'s Opp'n 7.) In *Boonton*, however, the court explicitly held that the administrative agency's abstention was proper because it related to an issue that "was not relevant to matters within its

10

jurisdiction." *Boonton*, 494 A.2d at 285. Plaintiff also points to *Christian Brothers Institute of New Jersey v. Northern New Jersey Interscholastic League*, 432 A.2d 26, 29 (N.J. 1981), as supporting the proposition that "failure to raise constitutional issues before [the administrative agency], where they could not be addressed in any event, [is] not fatal." (Pl.'s Opp'n 7.) The *Christian Bros.* court, however, noted that even if the plaintiff in that case was not able to raise the constitutional issue before the administrative agency, the "proper procedure was to raise these claims before the Appellate Division upon appeal from" the adverse action. 432 A.2d at 29; *accord Middlesex*, 457 U.S. at 426, 435 ("Abstention is based upon the theory that '[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." (quoting *Younger*, 401 U.S. at 45)); *Dayton Christian*, 477 U.S. at 629 ("[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding.")

As such, even if PERC and DOP refused to entertain Plaintiff's retaliation claims on the grounds that it was not competent to hear such matters, the proper procedure was for Plaintiff to appeal the matter to the Appellate Division and then the Supreme Court. *O'Neill*, 32 F.3d at 793 ("In any event, it is undisputed that [plaintiffs] could have raised their constitutional arguments before the administrative review board, again in the state-court appellate process, to and through the Pennsylvania Supreme Court, and, ultimately, before the United States Supreme Court."); *accord Anthony*, 316 F.3d at 422; *Huffman*, 420 U.S. at 608 ("[R]egardless of when the Court of Common Pleas' judgment became final, we believe that a necessary concomitant of Younger is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court . . . ."); *Zahl*, 282 F.3d at 210 (holding that the third prong of Younger was

11

satisfied where plaintiff could "assert his [constitutional] claim in the administrative proceeding itself and . . . have it reviewed by the New Jersey Appellate Division"); *see also Schall*, 885 F.2d at 107; *Dayton Christian*, 477 U.S. at 629; *Middlesex*, 45 U.S. at 437 ("It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court."). Here, Plaintiff knowingly, voluntarily, and intentionally chose not to pursue the instant claims at the state and administrative levels. Therefore, Plaintiff is barred from presenting them to this Court under *Younger*. Plaintiff further failed to raise these claims in state court despite being party to two pending state court actions. Thus, any argument that Plaintiff did not have an adequate opportunity to present its constitutional claims in state proceedings is untenable. Plaintiff cannot impermissibly seek to "bypass the state system and to seek relief in federal court" where it had ample opportunity to raise its federal claims in the administrative proceedings, where it had the right to appeal any adverse decision to higher courts, and where there exists no extraordinary circumstance that would make abstention inappropriate. *Anthony*, 316 F.3d at 420-21; *see also Middlesex*, 457 U.S. at 435; *Pennzoil*, 481 U.S. at 15. Accordingly, Defendants have satisfied the third element of *Younger* abstention.[4]

In sum, Defendants have sufficiently established the requisite elements of the *Younger* abstention doctrine. Plaintiff has failed to carry its burden in demonstrating its inapplicability or that state procedural law bars presentations of its instant claims. Consequently, the Court abstains under *Younger* from considering the merits of Plaintiff's complaint, and dismisses the

---

[4] The Court notes that Plaintiff continues to have the right to appeal the PERC determination, as it is still apparently pending, and raise its federal claims before the Appellate Division.

action so that Plaintiff's claims can continue to be litigated to conclusion at the state level (to the extent allowed by law).[5] The Court also rejects Plaintiff's latent attempt, by way of motion to amend its complaint for a second time, to cure an apparent standing defect and join as parties its individual members. The issue of amending the complaint is moot.

## V.   CONCLUSION

For all the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on *Younger* abstention grounds and **DENIES** Plaintiff's Motion to Amend the First Amended Complaint in its entirety with prejudice as moot. Plaintiff's complaint is dismissed in its entirety without prejudice and the Clerk of the Court shall remove this case from the Court's active docket.

### SO ORDERED.

s/Susan D. Wigenton, U.S.D.J.

cc: Madeline Cox Arleo, U.S.M.J.

---

[5] Were the Court to consider the merits of Plaintiff's complaint, seemingly every individual count may be subject to dismissal. By way of example, Plaintiff's substantive and procedural due process claims are apparently time-barred by the applicable two-year statute of limitations as they pertain to events taking place in 1997. Furthermore, the doctrines of res judicata and collateral estoppel likely preclude the Court from re-litigating matters that were previously presented before the State, PERC and DOP. Plaintiff's § 1985 claims may also be barred, as they do not allege that the conspiracy was motivated by a racial or class-based discriminatory animus. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Additionally, Plaintiff's request that the Court adjudicate its collective bargaining agreement dispute also appears to conflict with the required arbitration provision therein. Plaintiff's argument that the 1997 ordinance was void *ab initio* by the doctrine of legislative equivalency is also apparently invalid, as the ordinance was properly ratified and adopted on April 9, 1997. (Def.'s Reply Ex. A.).